IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILMINGTON MORTGAGE SERVICES, INC. | ) ) ) | |
| | ) | C.A. No. |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | |
| FINANCIAL NEWS NETWORK, LTD. AND TYLER INC., d/b/a NATIONAL FINANCIAL NEWS SERVICES | ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Wilmington Mortgage Services, Inc., for its Complaint against

Defendants Financial News Network, Ltd. and Tyler Inc., doing business as National Financial

News Services, states as follows:

1.      This is an action seeking preliminary and permanent injunctive relief,

attorneys' fees, and damages for one or more Defendants': (1) unfair competition, passing off,

false advertising, and false designation of origin under 15 U.S.C. § 1125(a); (2) dilution of a

famous mark under 15 U.S.C. § 1125(c); (3) bad faith intent to profit from a mark by registering

and using a domain name that is confusingly similar to or dilutive of the mark under 15 U.S.C.

§ 1125(d); (4) use of a trademark or any mark confusingly similar thereto under the Uniform

Deceptive Trade Practices Act, 6 Del. C. §§ 2531-2536; (5) use of a trademark or any mark

confusingly similar thereto in connection with businesses, goods and services that dilutes the

distinctive qualities of the mark under the Delaware Anti-Dilution Statute, 6 Del. C. § 3313; (6)

common law unfair competition; and (7) unjust enrichment.

## Jurisdiction and Venue

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C.

§ 1338, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.

§ 1367(a).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## The Parties

4.      Wilmington Mortgage Services, Inc. ("Wilmington Mortgage" or

"Plaintiff") is a Delaware Corporation with a principal place of business at 2126 West Newport

Pike, Suite 200, Wilmington, Delaware 19804. Wilmington Mortgage conducts business under

the name and is commonly known by its customers as "Wilmington Mortgage." *See, e.g.,* Ex. A.

5.      Wilmington Mortgage is in the business of residential mortgage lending,

with Delaware offices in Wilmington and Rehoboth/Dewey Beach, as well as offices in

Maryland, Pennsylvania and Florida. Wilmington Mortgage is Delaware's largest independent

licensed lender, it offers products from leading national and regional wholesale lenders, and it

provides approximately $400 million annually in homeowner loans to residents of Delaware,

Pennsylvania, Maryland, and Florida. One of Plaintiff's primary activities is advertising

mortgage rates.

6.      Upon information and belief, Defendant Financial News Network, Ltd.

("FNN") and Defendant Tyler Inc. ("Tyler") are Pennsylvania Business Corporations. Upon

information and belief, Defendant Tyler is the "fictitious owner" of Defendant National

Financial News Services ("NFNS"), a "fictitious name" entity registered in Pennsylvania, and

Tyler does business as NFNS. *See* Ex. B.

2

7.    Upon information and belief, FNN has a principal place of business at 331 West Boot Road, West Chester, PA 19380, and Ronald Schur is an officer of FNN. Upon information and belief, Tyler and NFNS have principle places of business at 331 West Boot Road, West Chester, PA 19380, and Ronald Schur is President of Tyler d/b/a NFNS. Collectively, FNN, Tyler, and NFNS are referred to as "Defendants" herein.

8.    Upon information and belief, Defendants regularly transact business within the State of Delaware, including through the website, www.wilmingtonmortgagerates.com and through *The News Journal*.

9.    Upon information and belief, one or more Defendants are national "local" marketing company or companies and are in the business of publishing local mortgage, financial, real estate, and shopping sites on at least the Internet in metropolitan areas throughout the United States. Through its "local" websites, including wilmingtonmortgagerates.com, and indirectly through local newspapers, including *The News Journal*, one or more Defendants promote to consumers those mortgage companies that subscribe to a "local marketing" service for a fee (Defendants' "Customers"), and also sell banner and other Internet advertisements to Customers on its various "local" websites. Accordingly, a primary activity of one or more Defendants is advertising mortgage rates.

10.    Upon information and belief, Ronald Shur is the administrator of the websites of one or more of the Defendants.

### Background

11.    Since 1994, Wilmington Mortgage has provided mortgage lending services to customers in Delaware, Pennsylvania, and Maryland. Since at least January 2005, Wilmington Mortgage has provided mortgage lending services to customers in Florida as well.

3

12.    Wilmington Mortgage owns the common law trademark "Wilmington Mortgage" and the goodwill symbolized therein.

13.    On June 25, 1997, Wilmington Mortgage registered the domain name "wilmingtonmortgage.com" with Network Solutions, LLC and has maintained its registration and operated its website ever since that date. *See* Ex. C.

14.    Wilmington Mortgage has extensively and continually advertised and promoted its mark "Wilmington Mortgage" since 1994 through the present in connection with its residential mortgage lending business and intends to continue to use, advertise, and promote its mark and its website in the future.

15.    Wilmington Mortgage estimates that it spends approximately $50,000 annually in marketing, advertising, and promoting goods and services using its mark. Such promotional materials include brochures, signs, and advertisements, including advertisements in *The News Journal. See, e.g.*, Ex. D (advertisement at top center of page of RE69).

16.    At no point in time has Wilmington Mortgage or anyone on its behalf authorized one or more Defendants to use Wilmington Mortgage's mark.

17.    The mark and the associated website have acquired a degree of consumer recognition in the minds of the relevant public, and the relevant public associates the mark with goods and services provided by Plaintiff throughout Delaware, Maryland, and Pennsylvania. The mark is famous and uniquely identifies quality goods and services provided by Wilmington Mortgage, enjoys goodwill, and has become an asset of value as a symbol of Wilmington Mortgage's goods and services.

18.    One or more Defendants have made and are making use of a name and domain name that is confusingly similar to Plaintiff's trademark and have advertised and are

advertising this confusingly similar name and domain name in advertisements and promotional materials for the mortgage company marketing business of one or more Defendants.

19.    Upon information and belief, Defendant NFNS registered the domain name wilmingtonmortgagerates.com with Network Solutions, LLC, and presently registers the domain name wilmingtonmortgagerates.com through Melbourne IT, Ltd., d/b/a/ Internet Names Worldwide.  *See* Ex. E.  Upon information and belief, the domain name is not case sensitive, so that a consumer entering wilmingtonmortgagerates.com, WILMINGTONMORTGAGERATES.COM, or WilmingtonMortgageRates.com will be connected to the website of one or more Defendants.

20.    Upon information and belief, consumers seeking a mortgage for a property in Delaware who visit the wilmingtonmortgagerates.com website and select "Display Mortgage Chart" (*see* Ex. F) are invited to "Get Mortgage Quotes from up to 3 Lenders" by selecting three lenders from a list of lenders (i.e., Defendants' Customers who have paid one or more Defendants to subscribe to this Internet-related service).  *See* Ex. G.  Wilmington Mortgage does not subscribe to this service.  Upon information and belief, the webpages at Exhibits F and G are copyrighted by FNN.

21.    A chart copyrighted by Defendant NFNS (the "Chart") is published once to twice a week in *The News Journal*.  The Chart displays mortgage rates and alphabetically lists Delaware area lenders, phone numbers, rates, and comments.  *See, e.g.,* Ex. D.  Defendant NFNS's website "www.WilmingtonMortgageRates.com" appears centered near the bottom of page RE69 in bold letters (below the list on the Chart).

22.    The use in commerce of Wilmington Mortgage's mark by one or more Defendants, as found on the Internet in the name and domain name

wilmingtonmortgagerates.com and as published once to twice weekly in the Chart in *The News Journal,* has caused and is likely to cause confusion or misunderstanding and has deceived members of the public into believing that Wilmington Mortgage is affiliated with or has sponsored, approved, or certified wilmingtonmortgagerates.com or has authorized use by one or more Defendants of Plaintiff's famous mark. Use by one or more Defendants of Wilmington Mortgage's famous mark is causing dilution of the distinctive quality of the mark, and is causing injury to Plaintiff.

23.    One or more Defendants have exhibited a bad faith intent to profit from Wilmington Mortgage's mark and have registered and used the domain name wilmingtonmortgagerates.com, which is confusingly similar to and dilutive of Plaintiff's mark, causing injury to Plaintiffs.

24.    Despite Plaintiff's demand, one or more Defendants have refused to cease operating the wilmingtonmortgagerates.com website and using and advertising this confusingly similar mark.

25.    One or more Defendants know of Plaintiff's continued use of Plaintiff's mark, and one or more Defendants willfully intended to and intends to trade on Plaintiff's reputation, profit from Plaintiff's mark, and cause dilution of Plaintiff's mark Wilmington Mortgage through the use and promotion of wilmingtonmortgagerates.com.

## COUNT I
## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT
### (15 U.S.C. § 1125(a))

26.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

27.    By the registration, use, and advertisement of the name and domain name wilmingtonmortgagerates.com, one or more Defendants have used a false designation of origin or a false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of wilmingtonmortgagerates.com with Wilmington Mortgage.

28.    The conduct of one or more Defendants constitutes a violation of 15 U.S.C. § 1125(a).

29.    The conduct of one or more Defendants has been and continues to be willful.

30.    As a direct and proximate result of one or more Defendants' conduct, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

31.    Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, disgorgement, costs, and attorneys' fees.

**COUNT II**
**VIOLATION OF SECTION 43(c) OF THE LANHAM ACT**
**(15 U.S.C. § 1125(c))**

32.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

33.    Plaintiff's mark Wilmington Mortgage is famous within the meaning of 15 U.S.C. § 1125.

34.    Use of the name and its registration and use of the domain name wilmingtonmortgagerates.com by one or more Defendants began after the mark Wilmington Mortgage had become famous.

7

35.     The registration, use, and advertisement of the name and domain name wilmingtonmortgagerates.com by one or more Defendants has caused and is causing dilution of Plaintiff's famous mark by lessening the ability of the public and Plaintiff's customers to associate the mark Wilmington Mortgage with Plaintiff, and is diluting Plaintiff's mark's function of identifying Plaintiff as a source of mortgage services.

36.     The conduct of one or more Defendants constitutes a violation of 15 U.S.C. § 1125(c)(1).

37.     One or more Defendants willfully intended to and intend to trade on Wilmington Mortgage's reputation or cause a dilution of Plaintiff's famous mark Wilmington Mortgage through the registration and use of wilmingtonmortgagerates.com within the meaning of 15 U.S.C. § 1125(c)(2).

38.     Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, disgorgement, costs, and attorneys' fees.

## COUNT III
## VIOLATION OF SECTION 43(d) OF THE LANHAM ACT
## (15 U.S.C. § 1125(d))

39.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

40.     Plaintiff's mark Wilmington Mortgage is famous within the meaning of 15 U.S.C. § 1125.

41.     One or more Defendants have registered and used and continue to register and use a domain name wilmingtonmortgagerates.com that is confusingly similar to and dilutive of Plaintiff's famous mark.

42.    By the registration and use of the domain name wilmingtonmortgagerates.com, one or more Defendants had and continue to have a bad faith intent to profit from Plaintiff's mark.

43.    The conduct of one or more Defendants constitutes a violation of 15 U.S.C. § 1125(d).

44.    As a direct and proximate result of the conduct of one or more Defendants, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

45.    Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, statutory damages, disgorgement, costs, and attorneys' fees.

**COUNT IV**
**VIOLATION OF THE DELAWARE UDTPA**

46.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

47.    Use of Plaintiff's trademark or any mark confusingly similar thereto by one or more Defendants constitutes a deceptive trade practice injurious to the business interest of Plaintiff, in violation of the Uniform Deceptive Trade Practices Act ("UDTPA"), 6 Del. C. §§ 2531-2536.  In particular, use of the confusingly similar mark by one or more Defendants:

(a)    causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services provided by one or more Defendants;

(b)    causes a likelihood of confusion or of misunderstanding as to the affiliation, connection or association with, or certification by, Plaintiff's business or goods and services;

(c)    represents that goods and services provided by one or more Defendants have sponsorship, approval, characteristics, ingredients, uses, benefit or qualities that they do not have or that the goods and services of one or more Defendants have a sponsorship, approval, status, affiliation or connection that they do not have; and

(d)    creates a likelihood of confusion or misunderstanding with respect to Plaintiff's involvement with the goods and services of one or more Defendants.

48.    The deceptive trade practices of one or more Defendants have confused and deceived, and have a tendency to confuse and deceive, members of the public.

49.    One or more Defendants have willfully engaged in deceptive trade practices.

50.    Plaintiff has been injured by the deceptive trade practices of one or more Defendants and is likely to be injured further by those practices if they continue.

51.    As a direct and proximate result of the conduct of one or more Defendants, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

52.    Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, disgorgement, costs, and attorneys' fees.

## COUNT V
## VIOLATION OF THE DELAWARE ANTI-DILUTION STATUTE

53.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

54.     Use of Plaintiff's trademark or a mark substantially and/or confusingly similar thereto by one or more Defendants in connection with their businesses and goods and services is likely to dilute the distinctive qualities of Plaintiff's mark and injure Plaintiff's business reputation.  For example, facilitation of and/or direct use of the confusingly similar mark by one or more Defendants improperly and wrongfully conveys to the relevant public and to others that the business and goods and services of one or more Defendants are Plaintiff's business and goods and services or that the business and goods and services of one or more Defendants are connected to or affiliated with Plaintiff's business and goods and services.

55.     The conduct of one or more Defendants constitutes a violation of the Delaware Anti-Dilution Statute, 6 Del. C. § 3313.

56.     As a direct and proximate result of the conduct of one or more Defendants, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

57.     Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, disgorgement, costs, and attorneys' fees.

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION**

58.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

59.     The willful and intentional use of the name and domain name wilmingtonmortgagerates.com by one or more Defendants has misled and confused and is likely to continue to mislead and confuse the public with respect to the nature and extent of Plaintiff's involvement, affiliation, connection, sponsorship, or association of

11

wilmingtonmortgagerates.com with Wilmington Mortgage. The conduct of one or more Defendants has damaged Plaintiff's business, reputation, goodwill, and other business interests.

60.     As a direct and proximate result of the conduct of one or more Defendants, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

61.     Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other remedies available at law, including but not limited to compensatory damages, treble damages, disgorgement, costs, and attorneys' fees.

**COUNT VII**
**UNJUST ENRICHMENT**

62.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

63.     One or more Defendants have been unjustly enriched by the unjustified use of the name and domain name wilmingtonmortgagerates.com, causing harm to Plaintiff's business to Plaintiff's detriment.

64.     As a direct and proximate result of the conduct of one or more Defendants, Plaintiff has suffered and will continue to suffer damages and irreparable harm.

65.     In the absence of an adequate remedy at law, Plaintiff is entitled to a preliminary and permanent injunction against one or more Defendants, as well as all other available remedies.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Wilmington Mortgage requests that the Court:

A.     Enter a preliminary and permanent injunction restraining one or more Defendants from:

(i)     infringing upon Plaintiff's mark or using any word, phrase, domain name, or design substantially or confusingly similar to it in connection with their businesses or sale of goods and services; or

(ii)     using any word, design, name, symbol, style, color, title, domain name or mark that is likely to be confused or to cause misunderstanding, to deceive or otherwise mislead the trade or the public to believe erroneously that the business, goods and services of one or more Defendants are in any way or manner associated or affiliated with or under the supervision or control of Plaintiff, or that such activities originate with Plaintiff; or

(iii)     using any word, design, symbol, style, color, domain name, or mark that injures or creates a likelihood of injury to the business reputation, name or goodwill of Plaintiff or dilutes the distinctive quality of Plaintiff's mark, name and domain name, including diluting, blurring, passing off, or falsely designating the origin of Plaintiff's mark;

(iv)     registering, using, advertising, or promoting the name or domain name wilmingtonmortgagerates.com or any other mark, name or domain name confusingly similar to or dilutive of Plaintiff's mark Wilmington Mortgage;

(v)     competing unfairly with Plaintiff or trading upon the goodwill of Plaintiff;

(vi)     profiting from the use of Plaintiff's mark, name, or domain name in bad faith.

B.     That one or more Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with the Court and serve upon Wilmington Mortgage within 30 days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which the Defendant has complied with the permanent injunction;

C.    Award Plaintiff compensatory damages in an amount to be fixed by the Court sustained as a result of the conduct of one or more Defendants;

D.    Award a trebling of Plaintiff's damages pursuant to 15 U.S.C. § 1117 and 6 Del. C. § 2533(c);

E.    Award Plaintiff all costs incurred by Plaintiff in enforcing its exclusive rights and trademark; and

F.    Declare this case exceptional under 15 U.S.C. § 1117(a) and 6 Del. C. § 2533(b) and order one or more Defendants to reimburse Plaintiff for its reasonable attorneys' fees;

G.    Award such other relief as the Court deems just and equitable.


CROSS & SIMON, LLC


Richard H. Cross, Jr. (Bar I.D. No. 3576)
Kristen Healey Cramer (Bar I.D. No. 4512)
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware  19899-1380
302-777-4200
302-777-4224 (facsimile)


Dated:  August 12, 2005


14